IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**KEVIN ACOSTA,**

       **Petitioner,**

**v.**                                        **2:26-cv-00838-DHU-JFR**

**TODD LYONS, Acting Director of ICE;**
**JOEL GARCIA, Director of ICE El Paso**
**Field Office; KRISTI NOEM, DHS Secretary;**
**PAM BONDI, U.S. Attorney General; and**
**DORA CASTRO, Warden of Otero County**
**Processing Center.**

       **Respondents.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Petitioner Kevin Acosta's Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, and Motion for a Temporary Restraining Order ("TRO"), Doc 4. Petitioner is currently in immigration detention and alleges that he was unlawfully re-detained after previously being released on bond by an Immigration Judge ("IJ"), in violation of his due process rights and the Immigration and Nationality Act (INA). Doc 1. at ¶¶ 1, 36. Petitioner asks the Court to declare his detention unlawful and to grant a writ of habeas corpus ordering Respondents to immediately release him. *Id.* at ¶ 2. For the reasons below, the Petition is **GRANTED IN PART**, and the TRO motion is **DENIED AS MOOT**.

### I.    FACTUAL BACKGROUND

Petitioner, a Mexican citizen, has lived in the United States since 2005, when he was approximately four or five-years-old. Doc. 1 at ¶¶ 9, 15. He entered through the port of entry in El Paso, Texas, where he was waved through as a small child. *Id.* at ¶ 15. Petitioner has a wife and

1

two children present in the United States. *Id.* at ¶ 17. He has been the family's primary breadwinner, having worked as both a construction worker and barber. *Id.* at ¶ 18.

In August 2022, Petitioner was arrested for driving while intoxicated (DWI) and for possession of a controlled substance. *Id.* at ¶ 19. While his possession charge was ultimately dismissed, Petitioner pled guilty to the DWI charge and was sentenced to community supervision, community service, testing, and related conditions. *Id.* He completed more than a year of probation and complied with required classes, community service, and therapy. *Id.*

Following the 2022 arrest, Immigration and Customs Enforcement (ICE) encountered Petitioner at the El Paso County Detention Facility and prepared a Form I-213 on September 13, 2022. *Id.* at ¶ 20. That document alleged that Petitioner was present without admission or parole and stated that ICE processed him for a warrant and notice to appear. *Id.* The same record shows that Petitioner was released on an order of recognizance in 2022 during the pendency of his removal proceedings on the non-detained docket. *Id.*

In 2024, Petitioner was again arrested after a domestic incident involving his wife. *Id.* at ¶ 21. After that incident, Petitioner reported to ICE with proof that the domestic violence-related charges had been dismissed. *Id.* Rather than release Petitioner, ICE detained him. *Id.* The Department of Homeland Security (DHS) then moved to change venue because Petitioner was in ICE custody at the El Paso Service Processing Center. *Id.* On July 17, 2024, IJ Stephen Ruhle granted Petitioner's request for a custody redetermination and ordered his release on a $3,500 bond, with any alternatives to detention to be imposed at DHS's discretion. *Id.* ICE records thereafter confirmed Petitioner's release on bond to his residence in Chaparral, New Mexico. *Id.*

After his release, Petitioner continued to comply with ICE supervision requirements. *Id.* at ¶ 22. On July 9, 2025, he appeared at his master calendar hearing in immigration court. *Id.* As he

exited the courtroom, ICE officers apprehended and detained him for approximately three to four hours. *Id.* Following that temporary detention, ICE again determined that Petitioner should be released. *Id.*

Despite the IJ's prior bond determination and Petitioner's compliance with his release conditions, ICE re-detained Petitioner on December 8, 2025 while he was at a store, stating that his detention was based on his criminal record. *Id.* at ¶ 23. Petitioner is currently in ICE's custody at the Otero County Processing Center in Chaparral, New Mexico. *Id.* at ¶ 8.

Petitioner filed the instant Petition and TRO motion with this Court on March 19, 2026, and March 21, 2026, respectively. Petitioner asks this Court to:

(1) Assume jurisdiction over this matter;

(2) Order that Petitioner not be transferred outside the District of New Mexico, and not be removed from the United States, during the pendency of this action;

(3) Pursuant to 28 U.S.C. § 2243, issue an order directing Respondents to show cause within three days why the Petition should not be granted;

(4) Declare that Petitioner's detention is unlawful and violates the Due Process Clause of the Fifth Amendment;

(5) Issue a writ of habeas corpus and order Petitioner's immediate release from ICE custody within 24 hours;

(6) Order Respondents to return to Petitioner all identification documents in their possession that were taken from him at the time of his detention in December 2025, including his driver's license;

(7) Enjoin Respondents from re-detaining Petitioner absent materially changed circumstances and without first providing a pre-detention hearing before a neutral IJ,

3

at which Respondents bear the burden of establishing by clear and convincing evidence that Petitioner poses a flight risk or a danger to the community and that no less restrictive alternative to detention would suffice; and

(8) Grant such other and further relief as the Court deems just and proper.

Doc. 1 at 25-26.

## II.    LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing he is being unlawfully detained in violation of the INA, its implementing regulations, and his Fifth Amendment due process rights.

The Fifth Amendment's Due Process Clause prohibits the government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

## III.    DISCUSSION

### a. Petitioner's re-detention without a pre-deprivation hearing violated his due process rights.

Petitioner argues that the Due Process Clause of the Fifth Amendment bars Respondents from re-detaining him without first providing him with a pre-deprivation hearing. Doc. 1 at ¶ 48. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary

4

to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

### i. Petitioner possessed a protected liberty interest.

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that Petitioner has a protected liberty interest in his release from immigration custody. Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled "him to do a wide range of things," including to work, develop community ties, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody in July 2024. Doc. 1 at ¶ 21. During this time, he worked to support his family and developed strong connections to his community in Chaparral. *Id.* at ¶ 23. These relationships and obligations are the very kind contemplated in *Morrissey* and demonstrate the liberty interest accrued by Petitioner during his more than year and a half on release.

### ii. A pre-deprivation hearing was required before Petitioner was re-detained.

Having found that Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action"; 2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and 3) "the Government's interest, including

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. As mentioned previously, Petitioner was out of immigration custody since July 2024 before being re-detained by ICE, during which time his interest in release grew even stronger as he worked and lived freely alongside family and other community members. His private interest in freedom from detention is therefore substantial. Doc. 1 at ¶ 51.

With respect to the second *Mathews* factor, the Court also finds that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner and has not shown a change in circumstances or otherwise explained why re-detention is necessary. *Id.* at ¶ 52. A pre-deprivation hearing would likely attenuate this risk, but Respondents provided no such hearing to Petitioner before re-detaining him.

Finally, the Court finds that the third *Mathews* factor favors Petitioner as well. Respondents' interest in placing Petitioner in detention absent some reason for doing so is low. *Id.* at ¶ 53. And requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration laws; it merely ensures its enforcement tactics comport with due process. Moreover, the effort and costs of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that under the three *Mathews* factors, Petitioner should have received a pre-deprivation hearing prior to being re-detained.

### b.  Petitioner's ongoing detention without a bond hearing is also unlawful.

Given the Court's finding that due process requires Petitioner's release, the Court need not make a determination regarding Petitioner's detention authority and entitlement to a bond hearing. However, it is worth noting that this case is not the first to raise this issue in this Court. In fact, the Court has already considered the statutory and constitutional issues raised by Petitioner with regard to §§ 1225 and 1226. *See Requejo Roman v. Castro et al.*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026); *see also Velasquez Salazar v. Dedos et al.*, --F.Supp.3d--, 2025 WL 2676729 (D.N.M. 2025); *Vega Uribe v. Noem*, No. 2:25-cv-01139, 2026 WL 127621 (D.N.M. Jan. 16, 2026); *Mendoza Rivas v. Noem*, No. 2:25-cv-01311 (D.N.M. Feb. 2, 2026); *Garcia Sanchez v. Noem*, No. 2:25-cv-01293 (D.N.M. Feb. 5, 2026). Because the facts here are not materially different than those the Court analyzed in previous cases, the Court's conclusion is the same. Mr. Acosta, who entered the U.S. without inspection over twenty years ago and was apprehended by ICE within the U.S. while he was at a store, is properly detained pursuant to 8 U.S.C. § 1226. For a detailed account of the Court's reasoning on this issue, see *Requejo Roman*.

### c. Immediate release is the appropriate remedy.

While Petitioner is entitled to a bond hearing while detained, such a remedy would not adequately address the most concerning violation present in this case—the Government's initial re-detention of Petitioner without due process of law. *See, e.g., E.A.T.-B. v. Wamsley*, 795 F.Supp.3d 1316, 1324 (W.D. Wash. 2025) ("[A] post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

An IJ already ordered Petitioner's release conditioned on a $3,500 bond and "ATD at discretion of DHS." Doc. 1-8 at 1. Therefore, Petitioner shall be released pursuant to the terms originally ordered by the IJ. *See Martinez-Elvir v. Olson*, No. 25-cv-589, 2025 WL 3006772, at

*13 (W.D. Ky. Oct. 27, 2025) (affirming release pursuant to requirements set forth by IJ); *Puerto-Hernandez v. Lynch*, No. 25-cv-1097, 2025 WL 3012033, at *11 (W.D. Mich. Oct. 28, 2025) ("Because the IJ is in the better position to evaluate whether Petitioner poses a flight risk and a danger to the community, the Court defers to the IJ's sound discretion and will order Petitioner's immediate release on the terms set by the IJ, including the bond of $5,000.").

#### d. The TRO motion is denied as moot.

Because the Court grants the Petition and orders immediate release from detention, the TRO motion is denied as moot without prejudice, as preliminary injunctive relief is no longer necessary.

### IV.    CONCLUSION

For the reasons stated above, Petitioner's habeas petition (Doc. 1) is **GRANTED IN PART** and his TRO motion (Doc. 4) is **DENIED AS MOOT**.

IT IS **THEREFORE ORDERED** that Respondents release Petitioner within twenty-four (24) hours of this Order and subject him to the same terms as his original Order of Release from the IJ. The parties must submit a joint status report to the Court **no later than Friday, March 27, 2026**, confirming Petitioner's timely release. Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing, that Petitioner is a danger to his community or a flight risk.

**IT IS FURTHER ORDERED** that, at the time of Petitioner's release, Respondents return to Petitioner all identification documents in their possession that they took from him at the time of his detention, including his driver's license.

Petitioner may submit an application for attorney's fees within thirty (30) days of this Order pursuant to 28 U.S.C. § 2412. Respondents may respond to Petitioner's application for fees no later than fourteen (14) days after Petitioner's application is filed with this Court.

The Court declines to grant Petitioner's remaining requests for relief.

**IT IS SO ORDERED**.

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE